**BRIAN J. FOLEY, Attorney at Law**
BY:     **BRIAN J. FOLEY, ESQ.** (PA ID No. 68806)
6701 Germantown Avenue, Suite 200
Philadelphia, PA  19119
(267) 930-4425
*Attorney for Plaintiff Kevin Lewis*

_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **KEVIN LEWIS** : | |
| : | |
| Plaintiff : | |
| : | CIVIL ACTION NO.  2:21-cv-3019 |
| v. : | |
| : | |
| **OVERBROOK SCHOOL FOR THE BLIND** : | |
| 6333 Malvern Avenue : | |
| Philadelphia, PA 19151 : | |
| : | |
| and : | |
| : | |
| **PATRICIA GOODING** : | |
| : | |
| and : | |
| : | |
| **SEAN WATERS** : | |
| : | |
| and : | |
| : | |
| **TERRI DAVIS,** : | JURY TRIAL DEMANDED |
| : | |
| Defendants. : | |

_____

## <u>COMPLAINT</u>

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages, liquidated damages, attorneys' fees, and other relief on behalf of Plaintiff, Kevin Lewis, an employee of Overbrook School for the Blind. Mr. Lewis has been harmed by Defendants' illegal discrimination and retaliation based on race, sex, and age. This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

## JURISDICTIONAL STATEMENT

2.      This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 1391.

3.      All conditions precedent to the institution of this suit have been fulfilled. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on August 13, 2020 (Charge No. 530-2020-05392), which was dual filed with the Pennsylvania Human Resources Commission (PHRC). On April 8, 2021,

the United States Equal Employment Opportunity Commission issued a Notice of

Right to Sue. This action has been filed within 90 days of receipt of this Notice.

## VENUE

4.      This action properly lies in the Eastern District of Pennsylvania, pursuant

to 28 U.S.C. § 1391(b), because the claims arose in this judicial district and

Defendants conduct business in this judicial district.

5.      Venue in the Eastern District of Pennsylvania is also authorized pursuant

to 42 U.S.C. § 2000(e) et seq.

## PARTIES

6.      Plaintiff, Kevin Lewis (hereinafter "Mr. Lewis"), is an adult African-

American male citizen and resident of Marlton, New Jersey and the United States

of America and is 55 years of age.

7.      Defendant Overbrook School for the Blind ("OSB") has a location at 6333

Malvern Avenue, Philadelphia, Pennsylvania 19151.

8.      At all relevant times, Defendant OSB employed approximately 300 people.

9.      At all relevant times, Defendant OSB acted by and through its authorized

agents, servants, workers, and/or employees acting within the course and scope of

their employment with OSB and in furtherance of OSB's business.

10.     At all relevant times, Defendant OSB acted as a "person" and/or "employer" within the meaning of one or more of the anti-discrimination laws at issue in this suit and is accordingly subject to the provision of these laws.

11.     At all relevant times, Plaintiff Kevin Lewis was an "employee" of Defendant OSB within the meaning of one or more of the anti-discrimination laws at issue in this suit and is accordingly entitled to the protection of these laws.

12.     PHRA Defendant/Respondent Patricia Gooding is an adult African-American female citizen and resident of Philadelphia, Pennsylvania and the United States of America. She is and was at all relevant times employed by OSB as a Security Officer. At all relevant times unless otherwise indicated, Gooding was Lead Officer / Supervisor and a supervisor of Officer Lewis, with authority including authority over assignments and scheduling; managing workflow; recommending disciplinary action; permitting (or not) breaks, including bathroom breaks; scheduling requested meetings for employees with Human Resources; dealing with requests for days off; and being "in charge."

13.     PHRA Defendant/Respondent Sean Waters is an adult African-American male citizen and resident of Philadelphia, Pennsylvania and the United States of America. He is and was at all relevant times employed by OSB as a Security Officer.

14.     PHRA Defendant/Respondent Terri Davis is an adult African-American female citizen and resident of Philadelphia, Pennsylvania and the United States of America. She is and was at all relevant times employed by OSB as a Security Officer.

## FACTS

15.     Kevin Lewis began his employment with Defendant OSB in 2018 as a Security Officer and Trainer and remains employed there. Before coming to OSB, Officer Lewis worked extensively in law enforcement, including as a federal law enforcement officer, military police, and security manager for the federal government.  He has experience in criminal investigations, law enforcement, public safety, and operations management, and a background in human resources.

16.     Officer Lewis earned numerous awards for outstanding performance in military and civilian assignments, including United States Government Outstanding Performance Award, United States Air Force Achievement Medal, and Commander's Honor Roll for Personnel Officer Course. He was consistently selected for leadership roles in major projects, including Military Police Armorer and elite, highly prestigious SWAT Units.  He earned an AAS degree in Criminal Justice and Law at Camden County College in 2017 and was on the Dean's List and President's List for Outstanding Academic Achievement.

17.     Officer Lewis has made significant contributions to OSB as an employee, providing security and training, including for "active shooter" events, as he is a certified active shooter trainer for K-12 schools. He was selected by OSB supervisors and school board officials to select, evaluate, and help implement a security identification system for the entire school to improve security and did so, creating significant financial savings for OSB. This identification system ensures individuals with criminal backgrounds, restraining orders, protective orders, and individuals who have been confirmed child abusers are not given access to the school.

18.     Despite his deep commitment to OSB and excellent performance, Officer Lewis, who is an African American man over age 40, has been discriminated against, harassed, subjected to a hostile work environment and differential treatment and retaliation by Defendants on the basis of his race, sex, and age and complaints about such treatment, as follows.

19.     In December 2018, while Officer Lewis was still on probation, Defendant /PHRA Respondent Patricia Gooding began harassing him. For example, she would made degrading comments about him, including over the radio frequency used by the security team, which other departments monitored. Gooding's comments implied that Officer Lewis lacked intelligence as an older African-American man.  2.   At one point, a supervisor, Chief Hitchcock, heard such

comments and told Officer Lewis he would make Gooding stop, and that she had engaged in such conduct before.

20.     Gooding also tried to force Officer Lewis to engage in similar harassment of another new worker, who was also an African -American man, which Officer Lewis refused to do.

21.     As a result, Gooding retaliated against Officer Lewis by forcing him to be isolated for five to six hours in a security post. Usually, a change occurs every two hours.

22.     In early April 2019, Officer Lewis reported the harassment by Gooding to the Chief of Security, Angie Williams.

23.     As a result, the security team no longer reported to Gooding, but to Chief Williams.

24.     The harassment ceased but then picked up.  For example, in the following two months, May and June 2019, Gooding once again made derogatory and discriminatory statements about Officer Lewis's purported lack of intelligence over the security radio.

25.     When Officer Lewis reported these incidents to supervisors Chief Hitchcock and Angie Williams, they said they would take care of the issue.

26.      However, the harassment and discrimination continued. For example, Gooding started and spread a false rumor that Officer Lewis was homosexual.

27.     Gooding also solicited various OSB employees to file complaints against Officer Lewis and write negative letters about him to OSB's Superintendent.

28.     On one occasion Officer Lewis witnessed Gooding instructing other employees in this manner and reported it to Chief Hitchcock.

29.     Gooding made false entries on the daily log to make it appear that Officer Lewis was late for work.

30.     In September 2019, Gooding manipulated a new employee, Defendant/PHRA Respondent Sean Waters, to join her in her harassment of Officer Lewis.

31.     Officer Lewis reported the harassment, and that it was based on illegal discrimination, to his new supervisor, Chief of Security Harry Hitchcock.

32.     Soon after, on or about the same month, Gooding made a *false* formal complaint to HR that Officer Lewis was using the restroom but failing to flush the toilet and portrayed him as unclean and unhygienic.

33.     Officer Lewis was reprimanded for this by Security Supervisor Troy Adams, who did not let Officer Lewis explain his side.

34.     The next month, October 2019, Gooding and Waters harassed Officer Lewis by refusing to relieve him from his post, including not allowing him to take a bathroom break, which was against OSB policy.

35.     Officer Lewis promptly reported this incident to Chief Hitchcock.

36.     The next time Gooding perpetrated this abusive and retaliatory tactic against Officer Lewis, on or about October 18, 2019, Officer Lewis reported it immediately to Chief Hitchcock.

37.     As a result, Chief Hitchcock called Waters and commanded him to relieve Officer Lewis.

38.     Minutes later, Respondent Waters came to relieve Officer Lewis and also threatened him verbally, saying, "I'm a fuck you up."

39.     Gooding arrived and said, "Fuck you and your mother" to Officer Lewis.

40.     A few days later, when Waters again relieved Officer Lewis from the front desk, he threatened Officer Lewis by saying "I'm going to fuck you up."

41.     When Officer Lewis walked toward the exit, Waters followed him and continued to threaten him but stopped doing so when two other employees turned the corner and could see him.

42.     Officer Lewis believes this threatening conduct toward him by Waters was perpetrated at the direction of and/or encouragement by Gooding, as retaliation for his complaints about her and Waters' harassment of him.

43.     Subsequently, in October 2019, Officer Lewis learned that Respondent Waters filed a complaint against *him*, alleging that Officer Lewis had threatened him.

44.     Officer Lewis told Chief Hitchcock that Waters' allegation was false and

9

suggested he obtain the security video of the incident.

45.     A few days later, on or about October 30, 2019, Officer Lewis reported this discrimination, harassment, hostile work environment, and retaliation by Gooding and Waters to HR Director Carol Havens and met with her.

46.     On or about November 21, 2019, supervisors Troy Adams and Chief Hitchcock informed Officer Lewis that Gooding would once again be his direct supervisor.

47.     Officer Lewis complained about this to HR Director Carol Havens the same day, reminding her of his earlier complaints of Gooding's discriminatory and retaliatory conduct toward him.

48.     The following week, Director Havens and Angie Williams, the Executive Director of OSB's Public Safety Department, met with Officer Lewis. The result of that meeting was that Officer Lewis no longer had to report to Gooding. Officer Lewis was also told that if he had any issues to report them to Angie Williams, who had been chief of security but had been promoted to Executive Director.

49.     In December 2019, there was another meeting between HR Director Havens, Executive Director Williams, Chief Hitchcock, and Officer Lewis.

50.     HR Director Havens reported that Waters had *recanted* his allegation that Officer Lewis had threatened him and admitted that he had threatened Officer Lewis.

51.     HR Director Havens, however, told Officer Lewis that his complaints against Gooding, including that she had worked with Waters to retaliate against Officer Lewis for complaining about discrimination, "could not be verified."

52.     HR Director Havens said that remedial training would be provided to employees including interpersonal communications and relations.

53.     In January 2020, Officer Lewis, seeking to escape the hostile work environment in OSB's public safety department, and to capitalize on his prior HR experience, applied as an internal candidate for an open HR generalist position.

54.     Contrary to OSB practice regarding internal candidates in good standing such as Officer Lewis, Officer Lewis was not only not hired, he was never given an interview.

55.     Officer Lewis believes this denial of promotion was retaliation for his complaints to HR and others about discrimination, harassment, etc. by Gooding and Waters.

56.     In addition, Officer Lewis believes illegal race and sex discrimination played a role, as he is unaware of any black males who have held this HR position. Officer Lewis also believes that the denial of promotion was a result of Gooding's spreading false rumors that he was homosexual.

57.     The position appears to have been filled by a black woman substantially younger than Officer Lewis who may be a temporary independent contractor.

11

58.     At one point, a white man substantially younger than Officer Lewis was hired for this same temporary position.

59.     In March 2020, Defendant/PHRA Respondent Terri Davis was hired by OSB as a security officer.

60.     Respondent Gooding befriended her, as she had befriended Waters when he was hired.

61.     Although Officer Davis was new, she would review paperwork to find purported problems with Officer Lewis's performance, and make negative comments about these purported problems in front of Gooding.

62.     In late March or early April, 2020, Officer Lewis did not receive his paycheck for two or three pay periods. He informed OBS, and a check was eventually cut for him.

63.     Officer Lewis later discovered that his home address had been changed in the OSB system. It has since been corrected, but he suspects that this was further retaliation for his protected activity.

64.     On June 23, 2020, Davis needed to open up a locked OSB room for use. She asked Officer Lewis, who was posted at the OSB gate house, where it was, and he told her the way he goes to get to the room.

65.     When Davis was unable to find it, Officer Lewis dispatched another officer to assist her.

66.     About 10 minutes later, Davis returned to the gate house. Appearing to be angry over her inability to find the room, Davis stormed at Officer Lewis, who was talking on his cell phone, and forcefully hurled an object at him, which hit him in the face.

67.     Officer Lewis learned that it was a key and grabbed it and threw it in opposite direction from Davis.

68.     He stood up to defend himself and asked Davis what was wrong with her;  she came at him again in an aggressive manner and reached out to grab him.

69.     Officer Lewis put up his hand to keep her away and yelled at her to get back and stop.  Davis continued to come at him and reached to grab his arm, but he pushed her off.

70.     She came back at him, saying "Don't push me!" and began to grab at him again.  Officer Lewis put up his hands again and pushed her off of himself with a little more force and told her to get out of the gate house.

71.     Respondent Davis's phone rang as she was leaving the gate house, and she answered it.

72.     Officer Lewis immediately called his supervisor, Chief Hitchcock.

73.     While Officer Lewis was on the phone with Chief Hitchcock, Respondent Davis came back into the gate house and made verbal threats of violence.

74.     Officer Lewis advised Chief Hitchcock what was happening and believes Chief Hitchcock overheard some of the attack.

75.     Officer Lewis filled out an incident report that day. Officer Lewis said that the person he had been talking with on the phone at the beginning of the incident could tell OSB officials what was heard. However, no one asked him to provide such information.

76.     Officer Lewis was suspended with pay for about two weeks.

77.     On July 10, 2020, Officer Lewis was disciplined by OSB for the incident, with a written warning.

78.     The warning was full of false and incorrect allegations and was not signed by anybody.

79.     Officer Lewis contacted HR to learn how he may respond or appeal this discipline but received no response. He nevertheless appealed the warning with a detailed rebuttal addressed to HR Director Carol Havens.

80.     Officer Lewis learned approximately two weeks later from Havens that the warning would not be removed from his record.

81.     Officer Lewis does not know if Davis was ever disciplined.

82.     This assault and battery by Davis -- like the assault by Waters -- was perpetrated at the direction of and/or encouragement by Gooding, in retaliation for Officer Lewis's reporting Gooding's and Davis's and Waters's discrimination

and harassment against him to his supervisors and to HR.

83.     Officer Lewis believes that OSB has treated him differently from similarly situated employees such as Gooding, Waters, and Davis, who Lewis believes were not disciplined for their misconduct toward him.

## Pattern and Practice

84.     Defendants have a pattern and practice of discrimination against its employees based on race, sex, and age.

85.     Gooding has a pattern and practice of discriminating against African-American men, men in general, and men who are over 40.  She also has a pattern and practice of retaliating against employees who make complaints about her discriminatory and harassing conduct toward them.

86.     Many of Gooding's targets have been driven out of employment at OSB by Gooding and others. In the past five years or so, five male security officers have quit. Of the five, three were African-American, and one of them was over 40. The other two were white, and both of them were over 40 years of age.

87.     OSB has long been aware of Gooding's patterns and practices but has not meaningfully disciplined her for such misconduct.

## COUNT I

### (Title VII - Plaintiff v. OSB)

88.    Plaintiff Kevin Lewis repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

89.    Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the Title VII.

90.    In discriminating against, harassing, and retaliating against Officer Lewis because of his race, sex, and age and because of his complaints about race, sex, and age discrimination and harassment, and failing to hire/promote Officer Lewis, Defendant OSB violated Title VII.

91.    These violations were intentional and willful and malicious.

92.    These violations warrant imposing punitive damages.

93.    As the direct and proximate result of Defendant OSB's violations of Title VII, Plaintiff Kevin Lewis has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

94.    Plaintiff Kevin Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

**<u>COUNT II</u>**

**<u>(Section 1981 - Plaintiff v. OSB)</u>**

16

95.     Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

96.     Based on the foregoing, Defendant OSB has engaged in unlawful employment practices in violation of Section 1981.

97.     In discriminating against, harassing, and retaliating against Officer Lewis because of his race because of his complaints about race discrimination and harassment, and failing to hire/promote Officer Lewis, Defendant OSB violated Section 1981.

98.     These violations were intentional and willful and malicious.

99.     These violations warrant imposing punitive damages.

100.    As the direct and proximate result of Defendant OSB's violations of Section 1981, Plaintiff Kevin Lewis has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

101.    Plaintiff Kevin Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT III

### (ADEA  - Plaintiff v. OSB)

17

102.    Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

103.    Based on the foregoing, Defendant OSB has engaged in unlawful employment practices in violation of the ADEA.

104.    In discriminating against, harassing, and retaliating against Officer Lewis because of his age because of his complaints about age discrimination and harassment, and failing to hire/promote Officer Lewis, Defendant OSB violated the ADEA.

105.    These violations were intentional and willful and malicious.

106.    These violations warrant imposing liquidated damages.

107.    As the direct and proximate result of Defendant OSB's violations of the ADEA, Plaintiff Kevin Lewis has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

108.    Plaintiff Kevin Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT IV

### (PHRA  - Plaintiff v. All Defendants)

109.   Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

110.   Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the PHRA.

111.   In discriminating against, harassing, and retaliating against Officer Lewis because of his race, sex, and age and because of his complaints about race, sex, and age discrimination and harassment, and failing to hire/promote Officer Lewis, Defendants violated the PHRA.

112.   Defendants/PHRA Respondents Patricia Gooding, Sean Waters, and Terri Davis aided and abetted the discrimination by OSB by, among other things, encouraging OSB to discriminate against and harass Plaintiff on the basis of his race, sex, and age and because of his complaints about such discrimination and harassment.

113.   As the direct and proximate result of all Defendants' violations of the PHRA, Plaintiff Kevin Lewis has sustained severe emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

114.   Plaintiff Kevin Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

**PRAYER FOR RELEIF**

115.    Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE,** Plaintiff Kevin Lewis respectfully requests that this Court enter judgment in his favor and against the Defendants:

a. Declaring that the acts and practices complained of herein violate Title VII;

b. Declaring that the acts and practices complained of herein violate Section 1981;

c. Declaring that the acts and practices complained of herein violate the ADEA;

d. Declaring that the acts and practices complained of herein violate the PHRA;

e. Enjoining and restraining permanently the acts and practices complained of herein;

f. Awarding compensatory damages to Plaintiff to make Plaintiff whole for all lost earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory conduct;

g. Awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

h. Awarding liquidated damages to Plaintiff;

i. Awarding punitive damages to Plaintiff;

j. Awarding Plaintiff costs of this action together with reasonable attorneys' fees; and

k. Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADEA, and the PHRA; and

l. Granting such other relief as is deemed just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury as to all issues so triable.

**BRIAN J. FOLEY, ATTORNEY AT LAW**

BY:_____

**BRIAN J. FOLEY, ESQUIRE**
Attorney for Plaintiff

Date:  July 7, 2021