# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **KEVIN LEWIS,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-3019** |
| | : | |
| **OVERBROOK SCHOOL FOR THE BLIND,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**Tucker, J.**                                                          **March 22, 2022**

Before the Court is Defendants Overbrook School for the Blind, Patricia Gooding, Sean Waters, and Terri Davis' Motion to Dismiss (ECF No. 5) and Plaintiff 's Response in Opposition (ECF No. 6). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED THAT** Defendants' initial Motion to Dismiss (ECF No. 3) is **DENIED AS MOOT**.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff brings this action for race, age, and sex-based discrimination, hostile work environment, and retaliation against his current employer, Overbrook School for the Blind (OSB), and its employees—Patricia Gooding, Sean Waters, and Terri Davis.

Plaintiff is a 55-year old African American man who began working for OSB in 2018. Pl. Amended Compl. ¶¶ 6, 15, ECF No. 4. Though he was hired as a Security Officer and Trainer, he also possesses a background in criminal investigations, law enforcement, public safety, and operations management, and human resources. *Id.* at ¶ 15. Despite exhibiting competence and

1

excelling in this role, Plaintiff claims that over a period of two years, OSB and its employees, Patricia Gooding, Sean Waters, and Terri Davis, discriminated against and created a hostile work environment for him on the basis of his race, age, and sex. *Id.* at ¶ 18. Further, he asserts that Defendants retaliated against him for making complaints regarding this treatment. *Id*. Of note, Gooding, Waters, and Davis are fellow Security Officers at OSB; in particular, Gooding is an African American woman and a Lead Officer/Supervisor who formally and informally supervised Plaintiff throughout this two-year period. *Id.* at ¶¶ 12-14.

In support of his discrimination, retaliation, and hostile work environment claims, Plaintiff argues that he had multiple contentious interactions with Gooding, Waters and Davis. He especially asserts that Gooding was effectively the "ringleader" coordinating these troubled encounters. *Id*. The following allegations are of particular relevance to this action.

### A. Direct Tensions Between Plaintiff and Gooding

Gooding began targeting Plaintiff while he was still in his probationary period, stating that Black men are unintelligent and stupid, and making offensive comments about him over OSB security's radio frequency system. She implied that Plaintiff lacked intelligence through her words and gestures, such as "making comments including [']duh, ugh duh,['] in an effort to sound like a Black man who was stupid." *Id*. at ¶ 19. Chief Hitchcock—another Supervisor— witnessed this behavior and advised Plaintiff that he would make Gooding stop.

Though customary protocol was that Security Officers changed posts every two hours, Gooding, as supervisor, deliberately forced Plaintiff to be isolated at a post for five to six hours, which did not permit him to take breaks. As well, she surveilled him excessively during his period, striving to highlight any errors made, and she gave him false information to cause him to make mistakes. *Id*. at ¶ 22. While permitting others to navigate the grounds with motorized golf

2

carts, Gooding made Plaintiff walk everywhere, particularly because he refused to discriminate and harass a different African American male employee. *Id*. at ¶ 23.

To thwart a presentation that Plaintiff was scheduled to give to other employees on ways to improve certain security measures, Gooding reported to another supervisor that Plaintiff "refused to go to his post, that he had abandoned his post and was insubordinate to her for not doing so." *Id*. at ¶ 24. Gooding did not subject the only non-African American Security Officer to this treatment, while two other African American men also expressed concern about Gooding's behavior. *Id*. at ¶¶ 31, 34. Though the three African American men, including Plaintiff, were eventually permitted to create their own schedule, Gooding remained their supervisor, and thus was still able to interact with Plaintiff. *Id*. at ¶¶ 37-39.

Gooding continued to engage in troubling behavior, degrading Plaintiff over the radio system by mocking African American men as stupid, giving him instruction in handling a student that would get him in trouble, and refusing to provide him with information to properly execute a fire drill. Plaintiff reported these incidents to management. *Id*. at ¶¶ 43-47. Further, Gooding would state that "a [B]lack man could not satisfy her sexually" and encourage Plaintiff and others to join in this dialogue; when Plaintiff did not do so, she said to everyone that Plaintiff is gay and began spreading false rumors to this end. *Id*. at ¶¶ 48-49.

Gooding directed a younger Asian male employee to call Plaintiff a "snitch" for reporting her behavior. *Id*. at ¶ 52. In his presence, Gooding encouraged other employees to send a letter of Complaint about Plaintiff because she did not like where he parked his car. *Id*. at ¶ 54. Moreover, Gooding would make false entries on Plaintiff's daily log to make it appear that he was late for work. When he asked her about these entries, she stated that she would do it again. *Id*. at ¶¶ 56, 58. Finally, Gooding made a false formal complaint to Human Resources (HR) that Plaintiff was

unclean and unhygienic, claiming that he was "using the restroom but failing to flush the toilet." *Id*. at ¶ 62.

### B. Tension Between Plaintiff and Sean Waters/Terri Davis

In September 2019, OSB hired Sean Waters—a younger African American male—as a Security Officer. As his supervisor, Gooding encouraged Waters to also mistreat Plaintiff, refusing to relieve him from his post and allowing him to take bathroom breaks. *Id*. at ¶¶ 59, 66. Plaintiff reported this behavior, and a supervisor called Waters and demanded that he relieve Plaintiff from his post. Afterwards, Waters approached Plaintiff stating: "I'm a fuck you up." *Id*. at ¶ 70. Gooding also arrived and said: "I'm going to fuck you up." *Id*. at ¶ 73 Waters followed Plaintiff as he was exiting and continued threatening him, but ceased once two other employees appeared. *Id*. at ¶ 74. In October 2019, Plaintiff learned that Waters filed a complaint against him, claiming that he was threatened by Plaintiff. *Id*. at ¶ 77. However, Waters later recanted this story, admitting that this allegation was false and that it was he who threatened Plaintiff. *Id*. at ¶ 90. Following the Waters incident, management officials eventually informed Plaintiff that he would no longer directly report to Gooding; however, she continued to give him orders. *Id*. at ¶ 88.

In March 2020, OSB hired Terri Davis—an African American woman in her 50s—as a Security Officer. *Id*. at ¶ 114. Like Waters, Davis soon joined Gooding in mistreating Plaintiff, as she would repeatedly report what she believed were errors in his work to Gooding. *Id*. at ¶¶ 117-18. In one specific incident, Plaintiff tried to give Davis instruction on finding a room that she needed to lock up, to no avail. Davis was unable to find the room, and, returning frustrated to the gate house where Plaintiff was located, she rushed towards him, throwing a key that hit him in his face. *Id*. at ¶¶ 128-30. This culminated in a physical altercation between the two, and Plaintiff

was subsequently suspended with pay for about two weeks. *Id*. at ¶¶ 133-40. Plaintiff was also given a written warning for failing to de-escalate the situation. *Id*. at ¶ 144. Neither Davis nor Gooding received any disciplinary action, though Plaintiff believes this incident was coordinated by Gooding. *Id*. at ¶¶ 157-58.

### C.  The HR Position

In January 2020, Plaintiff applied for an HR position at OSB, seeking to escape the troubles he was having in the security department. *Id*. at ¶ 95. Ultimately, OSB did not hire Plaintiff; instead, the school hired temporary independent contractors—a younger African American woman and a younger white man—to fulfill this role. *Id*. at ¶¶ 110, 111.

### D.  The Current Action

On these grounds, Plaintiff sued Defendant OSB on July 7, 2021 for discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). ECF No. 1. As well, Plaintiff sued Defendants Gooding, Waters, and Davis for violating the PHRA. Defendants filed a Motion to Dismiss and in response, Plaintiff filed an Amended Complaint. ECF Nos. 3 and 4. Defendants again filed a Motion to Dismiss, asserting that Plaintiff has failed to state a claim under the aforementioned statutes. ECF No. 5. For the forthcoming reasons, the Court only agrees in part.

### II. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in complaint survive a 12(b)(6) motion to dismiss.  A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  If the complaint fails to do so, the motion to dismiss will be granted.

### III. DISCUSSION

#### A.  PHRA Claims Against Waters and Davis

At the outset, Defendants Waters and Davis must be dismissed from this action because they were not Plaintiff's supervisors. Pursuant to the PHRA, it is unlawful for "any person, [or] employer...to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...or to attempt, directly or indirectly, to commit any act

6

declared...to be an unlawful discriminatory practice." 43 P.S. § 955(e). However, liability under this provision only extends to supervisory employees. *See Dici v. Commw. of Pa.*, 91 F.3d 542, 552-53 (3d Cir. 1996). Plaintiff contends that Waters and Davis are properly named Defendants because they "acted as agents of Gooding." Pl. Resp. in Opp. 26, ECF No. 6. However, the Court finds no support for the idea that such a purported agency relationship gives rise to a co-worker's liability under Section 955(e). Thus, Waters and Davis are dismissed.

### B.  Title VII, Section 1981, ADEA, and PHRA Claims Against OSB

#### i.      Discrimination Claims

The Court employs the same foundation to analyze Plaintiff's race, age, and sex-based discrimination claims under each statute. *See Tomaszewski v. City of Philadelphia*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020); *Williams v. Carson Concrete Corp.*, 2021 WL 1546455, at *3 (E.D. Pa. Apr. 20, 2021). Pursuant to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a Plaintiff must first demonstrate a prima facie case of discrimination. This requires a Plaintiff to show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) this adverse employment action occurred under circumstances that permit an inference of discrimination. *Id*. To be sure, at the pleading stage, a Plaintiff does not need to "establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). Rather a Plaintiff only must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary [prima facie] elements." *Id*. at 789. Still, Plaintiff cannot meet this lesser burden.

Here, the Parties dispute whether Plaintiff sufficiently pleads that an adverse employment action occurred as necessary to establish a prima facie case. The Court concludes that Plaintiff's

Complaint—though undoubtedly containing disturbing allegations—fails to sufficiently plead facts raising an expectation that discovery would reveal evidence of an employment action.

### a. The Suspension and Written Warning

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Barnett v. New Jersey Transit Corp*., 573 F. App'x 239, 244 (3d Cir. 2014) (quoting *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). Here, Plaintiff was only suspended *with* pay and given a written warning following the Davis incident. A suspension with pay is not "significant" enough to constitute an adverse employment decision. *See Jones v. Se. Pa. Transp. Auth*., 796 F.3d 323, 326-27 (3d Cir. 2015) (holding that a "suspension with pay, 'without more,' is not an adverse employment action under the substantive provision of Title VII."). Further, a written warning may constitute an adverse employment action, but only if it "effect[s] a material change in the terms or conditions of [the] employment." *Deans v. Kennedy House, Inc*., 998 F. Supp. 2d 393, 410 (E.D. Pa. Feb. 25, 2014), aff'd, 587 F. App'x 731 (3d Cir. 2014). As of today, Plaintiff still works at OSB. Thus, the Court fails to see any pleaded facts that could possibly reveal an adverse employment action.

### b. The "Failure to Promote" Plaintiff for the HR Position

Plaintiff alternatively asserts that his rejection for the HR position was "of course," an adverse employment action. Pl. Resp. in Opp. 25, ECF No. 6. To the extent that Plaintiff characterizes this rejection as a "failure to promote," this claim cannot stand under Title VII, Section 1981, and the PHRA. Indeed, "[t]o make out her prima facie failure to promote case, a plaintiff must establish that: (1) she belongs to a protected category; (2) she applied for and was qualified for a job in an available position; (3) she was rejected; and (4) after she was rejected,

the position stayed open and the employer continued to seek applications from similarly qualified individuals." *Riddell v. Slippery Rock Univ.*, 2006 WL 2773414, at *14 (W.D. Pa. Sept. 25, 2006) (citing *Bray v. Marriot Hotels*, 110 F.3d 986, 990 (3d Cir.1997)).

Here, Defendants contend that the position cannot be properly regarded as a potential promotion for Plaintiff because he was applying as a *Security Officer* for the *HR* position—a position in an entirely different department. Def. Mot. to Dismiss 11, ECF No. 5. Plaintiff counters that he has relevant experience in HR, such as previously completing a rigorous six-month course on HR, that made him qualified for the role. But, even if the position *was* a promotion, for which Plaintiff was qualified to fill, he still cannot make out the fourth element in the prima facia failure to promote claim. To prove the fourth element, the Plaintiff must establish that "other employees of similar qualifications who were not members of the protected group were promoted" *Bray*, 110 F.3d at 990. Here, while Plaintiff applied for the HR position, OSB ultimately never filled it. Instead, they opted to hire temporary independent contractors to complete the desired work. Therefore, no facts are pled that could possibly prove the fourth element. *See, e.g. Hunter v. Trustees of Univ. of Pennsylvania*, 2021 WL 1424710, at *6 (E.D. Pa. Apr. 15, 2021) ("Plaintiff also claims that the failure to hire or promote her … was racially discriminatory. But this position was never created and filled as anticipated. Instead, Defendant spread the duties across a larger team").

For these same reasons, Plaintiff also does not allege enough facts to make out a prima facie case of failure to promote specifically under the ADEA. *See Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004) ("In order to establish a prima facie case of discrimination, the plaintiff must demonstrate that (1) s/he is over forty, (2) is qualified for the position in question, (3) *suffered from an adverse employment decision*, and (4) that his or her

replacement was sufficiently younger to permit a reasonable inference of age discrimination). (emphasis added).

Given that Plaintiff pleads no facts indicating that an adverse employment action occurred, and no prima facie case of discrimination can be established, the Court dismisses his race, age, and sex-based discrimination claims accordingly.

### ii.   Retaliation Claims

To show a prima facie case of retaliation under Title VII, Section 1981, the ADEA, and the PHRA, a Plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995); *see also Boykins v. SEPTA*, 722 F. App'x 148 (3d Cir. 2018) (extending analysis to PHRA retaliation claims); *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192-93 (3d Cir. 2015) (extending analysis to ADEA retaliation claims); *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (extending analysis to Section 1981 claims).

It should be noted that the standard for an "adverse action" in the context of a retaliation claim is broader than it is in the context of a discrimination claim, as it applies to any actions that are "materially adverse" such that those actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). In determining whether an action is "materially adverse," a court "must remain mindful that 'it is important to separate significant from trivial harms' because '[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees

experience.'" *Id*. at 346 (quoting *Burlington N*., 548 U.S. at 68). Finally, regarding the causation element, a court decides whether there was a causal connection between the protected activity and the alleged retaliatory act by looking for "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Upon reviewing Plaintiff's allegations as a whole, the Court finds that Plaintiff does plead facts supporting a charge of retaliation. Beyond the suspension and failure to be hired/promoted for the HR position, Plaintiff alleges multiple contentious incidents over the two-year period; of special notice to the Court are Plaintiff's verbal and physical altercations with Gooding, Waters, and Davis, as well as the several alleged false reports about Plaintiff made to upper-level staff. Taken together, these repeated incidents may have dissuaded a reasonable employee from making a discrimination charge. Further, the Court also finds that Plaintiff plausibly pleads a causal connection between his complaints and these various incidents—in particular, just minutes after an upper-level official demanded that Waters relieve Plaintiff from his post, Waters confronted Plaintiff and threatened to attack him. Pl. Compl. ¶ 70, ECF No. 4.

Accordingly, the Court declines to dismiss Plaintiff's retaliation claims.

### iii.   Hostile Work Environment Claims

The Court similarly finds that Plaintiff sufficiently pleads a hostile work environment claim on these grounds. Under Title VII, Section 1981, the ADEA and the PHRA, such claims require that a plaintiff show that: "(1) she suffered intentional discrimination because of a protected characteristic; (2) discrimination was "pervasive and regular"; (3) it "detrimentally" affected her; (4) "it would have detrimentally affected a reasonable person of the same protected class in [her] position"; and (5) "there is a basis for vicarious liability."" *Anderson v. Boeing Co*.,

694 F. App'x 84, 89 (3d Cir. 2017) (quoting *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (internal quotations omitted); *see also Slater v. Susquehanna Cty.*, 465 F. App'x 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim.").

Conditions possibly evincing a hostile work environment include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Moreover, in examining the severity or pervasiveness of alleged workplace discrimination, a court must consider the totality of the circumstances, as opposed to concentrating on individual incidents. *Peace Wickham v. Walls*, 409 Fed. App' x. 512, 519 (3d Cir. 2010).

Here, Defendants argue that Plaintiff's allegations do not include any "severe or pervasive" behavior. The Court disagrees. Defendants focus almost exclusively on the various comments made to and about Plaintiff. Def. Mot. to Dismiss 13-14, ECF No. 5. However, Plaintiff does not plead the occasional verbal insults alone; as discussed above, he was threatened with violence on one occasion and physically attacked in another. In the context of the broader problems that Plaintiff experienced with Gooding, Waters, and Davis throughout the two-year period, the Court concludes that Plaintiff sufficiently makes allegations of severe or pervasive behavior giving rise to a hostile work environment claim.

Therefore, the Court also declines to dismiss Plaintiff's retaliation claims.

## C. PHRA Claim Against Gooding

Finally, because Plaintiff plausibly pleads a prima facie claim for retaliation and hostile work environment, the Court also declines to dismiss Gooding from this action. Unlike Waters and Davis, Gooding is potentially susceptible to liability under Section 955(e), as she was in fact Plaintiff's supervisor. Moreover, Plaintiff cites her as a significant contributor to his alleged various retaliatory actions and hostile work environment. *Compare Vazquez v. Carr & Duff, Inc.*, 2017 WL 4310253, at *7 (E.D. Pa. Sept. 28, 2017) (finding that the defendants could not be liable under Section 955(e) where there was "no misconduct to aid or abet").

As a result, the Court does not dismiss Gooding from this action.

**IV. CONCLUSION**

For the foregoing reasons:

1. Defendants Waters and Davis are **DISMISSED WITH PREJUDICE** from this suit;

2. Defendants' Motion to Dismiss Plaintiff's discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**;

3. Defendants' Motion to Dismiss Plaintiff's retaliation and hostile work environment claims under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act is **DENIED;** and

4. Defendant's Motion to Dismiss Defendant Patricia Gooding from this suit is **DENIED**.

An appropriate Order follows.